**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ILLINOIS BELL TELEPHONE COMPANY, D/B/A AT&T ILLINOIS, </br></br>    Plaintiff, </br></br>v. </br></br>MEDIACOM TELEPHONY OF ILLINOIS, LLC, </br></br>    Defendant. | Case No.: 1:18-CV-00050 |

## COMPLAINT

Plaintiff Illinois Bell Telephone Company, d/b/a AT&T Illinois ("AT&T Illinois"), through its undersigned counsel, files this Complaint against Defendant Mediacom Telephony of Illinois, LLC ("Mediacom"), and seeks declaratory, injunctive, and monetary relief from Mediacom.

1. This case involves Mediacom's refusal to pay AT&T Illinois for dedicated facilities and trunks that AT&T Illinois provided and continues to provide to Mediacom pursuant to: (a) AT&T Illinois's Tariff No. 21 ("Tariff"); and (b) a contract, commonly referred to as an Interconnection Agreement[1] ("ICA") between AT&T Illinois and Mediacom. Dedicated facilities are high-capacity pipes that carry voice and data communications. AT&T Illinois provided facilities to Mediacom pursuant to AT&T Illinois' Tariff. Trunks are communications lines, that reside within the facility, and connect two telecommunications carrier's switching systems, which are each typically housed in telecommunications' companies' central offices. This case involves dedicated facilities and trunks related to 911 Service. Dedicated facilities and trunks connect Mediacom's facilities to AT&T Illinois' switching systems, also called Selective Routers, which

---

[1] Due to size of the document this contract will be provided to the court and opposing counsel upon request and/or court order.

route 911 calls to Public Safety Answering Points ("PSAPs"), which answer 911 calls and are the first point of contact for 911 callers.

2. AT&T Illinois requests the Court to: (a) declare that Mediacom is in violation of AT&T Illinois' Tariff; (b) declare that Mediacom is in violation of AT&T Illinois' ICA; (c) enjoin Mediacom from further violations; and (d) order Mediacom to compensate AT&T Illinois for its damages, including the recovery of unpaid charges and applicable late payment charges.

## THE PARTIES

3. Plaintiff Illinois Bell Telephone Company, d/b/a AT&T Illinois, is an Illinois corporation with its principal place of business at 225 West Randolph Street, Chicago, Illinois 60606. AT&T Illinois is an Incumbent Local Exchange Carrier ("ILEC"), as defined by 47 U.S.C. § 251 (h), and provides telecommunications services in Illinois.

4. Defendant Mediacom Telephony of Illinois, LLC ("Mediacom") is a Delaware limited liability company with its principal place of business in Mediacom Park, New York. Mediacom is a Competitive Local Exchange Carrier ("CLEC") which is licensed to provide and does provide telecommunications services in Illinois. Mediacom may be served with process through its registered agent, CT Corporation System, 208 South Lasalle Street, Suite 814, Chicago, Illinois 60604-1101.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1337 and 47 U.S.C. § 207.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) as Mediacom resides in this district within the meaning of 28 U.S.C. § 1391 (c) and (d), and/or because Mediacom has agents and transacts business in this district, and/or because a substantial part of the events or omissions giving rise to AT&T Illinois's claims occurred in this judicial circuit.

**BACKGROUND FACTS**

A.   **Interconnection Agreement ("ICA")**

7.   In November 2009, AT&T Illinois and Mediacom entered into an ICA pursuant to Sections 251 and 252 of the Telecommunications Act of 1996.

8.   Section 3.14 of the ICA addresses 911 Service and specifies that 911 Arrangements are arrangements for routing 911 calls from Mediacom's Customers to the appropriate PSAP, passing certain customer information for display at the PSAP based on the class of 911 service deployed in the area.

9.   Pursuant to the terms of the ICA, AT&T Illinois is required to provide, did provide, and continues to provide facilities to Mediacom pursuant to the ICA.

10.   Pursuant to the terms of the ICA, Mediacom was required to use AT&T Illinois to provide 911 Service with the exception of the provision of customer 911 records, including Automatic Location Identification, which is information about Mediacom's customers' locations so that 911 providers can respond to 911 calls. The ICA specifically provides that Mediacom could use a third-party agent with respect to the provision of 911 records.

11.   That Mediacom was required to purchase 911 Service from AT&T Illinois is evident when one reviews Section 3.14 of the ICA.

12.   Section 3.14.1 requires AT&T Illinois to provide 911 Arrangements to Mediacom in each exchange in which: (a) Mediacom is authorized to provide local exchange services; and (b) AT&T Illinois is the 911 service provider.

13.   Section 3.14.2 provides in pertinent part:

> (a) [AT&T Illinois] will provide [Mediacom] with multiplexing at a designated [AT&T Illinois] Central Office at the rates set forth in the Pricing Schedule and pursuant to the terms and conditions in applicable tariffs. [AT&T Illinois] will also provide [Mediacom] upon request

3

       with dedicated trunking from the [AT&T Illinois] Central Office to the designated [AT&T Illinois] Central Office(s) with sufficient capacity to route [Mediacom's] originating 911 calls over Service Lines to the designated primary PSAP or to designated alternate locations. Trunks shall be established as CAMA MF trunks until SS7 connectivity is required by the applicable jurisdiction. Thereafter, trunks shall be established with SS7 signaling and both parties will cooperate to implement CCIS trunking. Such trunking will be provided at the rates set forth in the <u>Pricing Schedule</u> or applicable state tariff. If [Mediacom] forwards the ANI information of the calling party to the Control Office, [AT&T Illinois] will forward that calling number and the associated street address to the PSAP for display. If no ANI is forwarded by [Mediacom], [AT&T Illinois] will display a Central Office Identification code for display at the PSAP.

    (b) [Mediacom] will provide a minimum of two (2) one-way outgoing channels per diverse path to route originating 911 traffic from [Mediacom's] End Office(s) to the [AT&T Illinois] 911 Control Office(s). The points of Interconnection for primary and diverse routes are identified at <u>Section 3.14.5</u>. CLEC may, at its option, acquire such trunking from [AT&T Illinois] at the rates, terms and conditions provided in [AT&T Illinois'] tariffed DS1 rates.

14. Section 3.14(e) requires AT&T to route the E911 calls to its 911 tandems or selective routers to PSAPs. Specifically, Section 31.4(e) provides:

> [AT&T Illinois] shall route E911 calls delivered by [Mediacom] to [AT&T Illinois'] 911 tandems or selective routers to PSAPs. [AT&T Illinois] shall provide to the PSAPs and validate [Mediacom] Customer information from the ALI/ANI database.

15. Section 3.14.2(k) provides:

> [Mediacom] shall pay [AT&T Illinois] charges as set forth in the <u>Pricing Schedule</u> or in the applicable state tariff in states where 911 tariffs exist.

16. Section 3.14.2(l) provides:

> In the event of an [AT&T Illinois] or [Mediacom] trunk group failure, the Party that owns the trunk group will notify, on a priority basis, the other Party of such failure, which notification shall occur within two (2) hours of the occurrence or sooner if required under Applicable Law. The Parties will exchange a list containing the names and telephone numbers of the support center personnel responsible for maintaining the 911 Service between the Parties.

17. Section 3.14.2(n) provides:

   [Mediacom] or its third party agent will provide Automatic Location Identification (ALI) data to [AT&T Illinois] for use in entering the data into the 911 database. The initial ALI data will be provided to [AT&T Illinois] in a format prescribed by [AT&T Illinois]. [Mediacom] is responsible for providing [AT&T Illinois] updates to the ALI data and error corrections which may occur during the entry of ALI data to the [AT&T Illinois] Database System. [Mediacom] shall reimburse [AT&T Illinois] for any additional database charges incurred by [AT&T Illinois] for errors in the ALI data updates caused by CLEC or its third party agent. [AT&T Illinois] will confirm receipt of such data and corrections by the next Business Day by providing CLEC with a report of the number of items sent, the number of items entered correctly, and the number of errors.

18. Section 3.14.3 provides:

   Compensation. In addition to the amounts specified in Section 3.14.2, [Mediacom] shall compensate [AT&T ILLINOIS] as set forth in the Pricing Schedule or based upon tariff pricing in States where 911 tariffs have been filed.

19. Section 3.14.5 provides:

   911 Interconnection for Primary and Diverse Routes. [Mediacom's] point of Interconnection for E911/911 Service can be at the [AT&T Illinois] Central Office, a Collocation point, or via a facility provisioned directly to the [AT&T Illinois] 911 Selective Router. [Mediacom] shall pay tariff charges for Diverse routes. [Mediacom] will be responsible for determining the proper quantity of trunks from its End Office(s) to the [AT&T Illinois] Central Office(s). Trunks between the [AT&T Illinois] Central Office and the [AT&T Illinois] control office shall be delivered by [AT&T Illinois] within twenty (20) business days after receipt of the request. When [AT&T Illinois] network force and load conditions require a longer implementation timeframe, [AT&T Illinois] with notify [Mediacom] within five (5) business days after receipt of the request and the timeframe will be agreed upon. Following delivery, [Mediacom] and [AT&T Illinois] will cooperate to promptly test all transport facilities between [Mediacom's] network and the [AT&T Illinois] Control Office to assure proper functioning of the 911 service. [Mediacom] will not turn-up live 911 traffic until successful testing is completed by both parties.

20. Section 3.14.12 provides:

> CLEC or its third party agent shall provide initial and ongoing updates of customer 911 records (i.e., telephone numbers, addresses, etc.) in electronic format based upon established NENA industry standards.

21. As outlined above, Section 3.14 of the ICA clearly outlines the obligations of AT&T Illinois and Mediacom and sets forth the terms and conditions when a third-party can become involved in the provision of 911 Service.

22. Specifically, a third-party can only provide 911 Service with respect to the provision of customer 911 records.

23. However, Mediacom may only purchase its 911 facilities and trunks from AT&T Illinois.

24. Mediacom retained a third-party agent to provide facilities and trunks and thereafter refused to use the 911 trunks that it is required to purchase from AT&T Illinois and the facilities that it ordered to carry those trunks from AT&T Illinois' tariff.

25. Mediacom breached the ICA by refusing to pay for the 911 trunks that it is required to purchase from AT&T Illinois and breached AT&T Illinois' tariff by refusing to pay for the facilities that it ordered to carry those trunks, even though AT&T Illinois provided and continues to provide facilities and trunks to Mediacom pursuant to the terms of AT&T Illinois' Tariff and the ICA as outlined below.

**B.      The Provision of Facilities**

26. Dedicated facilities are high-capacity pipes that carry voice and data communications.

27. AT&T Illinois provided facilities to Mediacom pursuant to AT&T Illinois' Tariff.

28. Specifically, AT&T Illinois provided Dedicated DS1 facilities between two points within the State of Illinois; for example, between Geneva, Illinois, and Joliet, Illinois. There are three facilities charges associated with these DS1 facilities. First, the customer pays a per mile charge for the DS1 facility connection the two locations. Second, the customer pays a monthly fixed charge for terminating equipment at each end of the facility. Third, the customer pays a dedicated trunk port charge which connects the DS1 to AT&T Illinois' switch. These charges will collectively be referred to as "facilities charges."

29. For years, Mediacom paid the facilities charges.

30. However, commencing in approximately July 2015, Mediacom steadfastly refused to pay for the facilities that AT&T Illinois provided to it pursuant to AT&T Illinois' Tariff.

31. As of November 27, 2017, Mediacom has incurred Three Hundred Sixty-Eight Thousand Two Hundred Fifty-Eight Dollars and Twenty-Two Cents ($368,258.22) for facilities that AT&T Illinois has provided to it.

**C.     The Provision of Trunks**

32. Trunks are communications lines, that reside within the facility, and connect two telecommunications carrier's switching systems, which are each typically housed in telecommunications' companies' central offices.

33. Pursuant to the terms of the ICA, AT&T Illinois is required to provide, has provided, and continues to provide trunks to Mediacom. These trunks connect Mediacom's facilities to AT&T Illinois' switching systems, also called Selective Routers, which route the 911 calls to Public Safety Answering Points ("PSAPs"), which answer 911 calls and are the first point of contact for 911 callers. For years, Mediacom paid for the trunks.

34. However, commencing in approximately July 2015, Mediacom steadfastly refused to pay for the trunks that AT&T Illinois provided to it pursuant to the ICA.

35. As of November 27, 2017, Mediacom has incurred Twenty-Four Thousand One Hundred Seventy-Five Dollars and Fifty-Three Cents ($24,175.53) for trunks that AT&T Illinois provided to it.

## COUNT I – VIOLATION OF AT&T ILLINOIS' TARIFF NO. 21

36. AT&T Illinois incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

37. AT&T Illinois's rates, terms, and conditions for facilities are set forth in AT&T Illinois' Tariff.

38. Mediacom purchased facilities from AT&T Illinois' Tariff.

39. AT&T Illinois provided facilities as Mediacom requested and otherwise fully performed its relevant obligations under AT&T Illinois' Tariff, except those that it was preventing from performing, those it was excused from performing, or those that were waived by Mediacom's misconduct as alleged herein.

40. AT&T Illinois duly billed Mediacom for the facilities it provided pursuant to AT&T Illinois' Tariff.

41. Mediacom failed to pay AT&T Illinois for the facilities in accordance with AT&T Illinois' Tariff.

42. Mediacom has violated, and is violating, AT&T Illinois' Tariff.

43. AT&T has been damaged in an amount to be determined by this Court, including but not limited to damages for facilities that it provided to Mediacom, as well as late payment fees.

**COUNT II - DECLARATORY JUDGMENT/INJUNCTIVE RELIEF**

44. AT&T Illinois incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

45. Mediacom is required to pay for trunks that AT&T Illinois provided and continues to provide to Mediacom pursuant to AT&T Illinois' Tariff.

46. AT&T Illinois is entitled to a declaratory judgment that AT&T Illinois' Tariff requires Mediacom to pay facilities charges on a monthly basis for the facilities charges that AT&T Illinois provided and continues to provide to Mediacom and that AT&T Illinois properly invoiced Mediacom for those charges.

47. Absent injunctive relief, AT&T Illinois will be irreparably harmed.

48. If Mediacom is permitted to continue avoiding the payment of facilities charges, AT&T Illinois will be forced to initiate multiple legal proceedings against Mediacom to determine the amount of facilities charges Mediacom should have paid AT&T Illinois on an ongoing basis.

**COUNT III – VIOLATION OF THE INTERCONNECTION AGREEMENT**

49. AT&T Illinois incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

50. AT&T Illinois's rates, terms, and conditions for the provision of trunks are set forth in the ICA.

51. Mediacom purchased trunks from the ICA.

52. AT&T Illinois provided trunks as Mediacom requested and otherwise fully performed its relevant obligations under the ICA, except those that it was preventing from performing, those it was excused from performing, or those that were waived by Mediacom's misconduct as alleged herein.

53. AT&T Illinois duly billed Mediacom for the trunks it provided pursuant to the ICA.

54. Mediacom failed to pay AT&T Illinois for the trunks in accordance with the ICA.

55. Mediacom has violated, and is violating, the ICA.

56. AT&T has been damaged in an amount to be determined by this Court, including but not limited to damages for trunks that it provided to Mediacom, as well as late payment fees.

## COUNT IV - DECLARATORY JUDGMENT/INJUNCTIVE RELIEF

57. AT&T Illinois incorporates by reference, as though fully set forth herein, the allegations of the preceding paragraphs of this Complaint.

58. Mediacom is required to pay for trunks that AT&T Illinois provided and continues to provide to Mediacom pursuant to AT&T Illinois' Tariff.

59. AT&T Illinois is entitled to a declaratory judgment that the ICA requires Mediacom to pay trunk charges on a monthly basis for the trunks that AT&T Illinois provided and continues to provide to Mediacom and that AT&T Illinois properly invoiced Mediacom for those charges.

60. Absent injunctive relief, AT&T Illinois will be irreparably harmed.

61. If Mediacom is permitted to continue avoiding the payment of trunk charges, AT&T Illinois will be forced to initiate multiple legal proceedings against Mediacom to determine the amount of trunk charges Mediacom should have paid AT&T Illinois on an ongoing basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Illinois Bell Telephone requests the following relief:

(a) Declaratory relief finding that Mediacom is in violation of AT&T Illinois' Tariff No. 21;

(b) Declaratory relief finding that Mediacom is in violation of the ICA;

(c) Preliminary and injunctive relief enjoining Mediacom from continuing to engage in the misconduct complained of;

(d) Monetary damages in the amount of the facility and trunk charges that AT&T Illinois is entitled to pursuant to AT&T Illinois' Tariff No. 21 and ICA, and that Mediacom has refused to pay; and

(e) Such other and further relief, in law and in equity, that the Court finds that AT&T Illinois is justly entitled.

Dated: January 4, 2018.                    Respectfully submitted,

ILLINOIS BELL TELEPHONE COMPANY
d/b/a AT&T Illinois ("AT&T Illinois")


By:    /s/ Nicole Byrd
       One of their attorneys


Nicole Byrd
*Attorneys for Defendant Illinois Bell Telephone Company* d/b/a AT&T Illinois ("AT&T Illinois")
AT&T Midwest Law Department
225 W. Randolph
25th Floor
Chicago, IL  60606
312.727.6433
312.629.5244 (fax)
nicole.byrd@att.com